El Juez Asociado Señor Rivera Pérez
emitió la opinión del Tribunal.
Nos corresponde resolver si como parte de una acción in rem dirigida a recuperar el título de un bien inmueble, un socio miembro de una sociedad especial puede solicitar la anotación preventiva de demanda al amparo de la excep-ción consagrada en el Art. 113 de la Ley Hipotecaria y del Registro de la Propiedad en el Registro de la Propiedad a pesar de que tal inmueble está inscrito a favor de la socie-dad especial a la cual pertenece, y el cual, alegadamente, fue transferido de manera ilegal a un tercer ente jurídico.
*866 I
Para 1993, el Sr. Evaristo Quiñones Reyes junto a su esposa, Sra. Cecilia Badillo, adquirieron mediante una es-critura de compraventa sesenta parcelas, de aproximada-mente trescientas dieciséis cuerdas, ubicadas en los barrios Río Grande y Puntas del Municipio de Rincón. Ello con el propósito de desarrollar un complejo turístico y resi-dencial al que denominaron Punta del Mar.(1)
En búsqueda del capital para desarrollar el proyecto, el señor Quiñones Reyes, el Sr. Nicomedes Barreto y el Sr. Arturo Correa Nieves procedieron a otorgar un contrato de inversión y, posteriormente, constituyeron dos sociedades especiales, a saber: Punta del Mar y Punta del Mar Beach Village.(2) En el contrato de constitución de sociedad especial pactaron que la corporación Punta del Mar, Inc. sería socia y tendría la encomienda de dirigir y administrar los negocios de ambas sociedades especiales.(3) Mediante Es-critura de Cesión de Participación de Bien Inmueble, el señor Quiñones Reyes y su esposa le cedieron 109.5 cuer-das a Punta del Mar Beach Village, S.E., y el remanente de dicha finca fue cedido a Punta del Mar, S.E.
Posteriormente, el Sr. Nicomedes Barreto vendió su par-ticipación en ambas sociedades especiales y en Punta del Mar, Inc. al señor Correa Nieves, por lo que éste advino *867 socio y accionista mayoritario. A raíz de este suceso comen-zaron a surgir desavenencias entre el señor Quiñones Reyes y el señor Correa Nieves sobre la toma de decisiones y la administración de las sociedades especiales.
El pasado 28 de octubre de 2005, el señor Quiñones Reyes presentó una demanda contra el señor Correa Nieves, el Sr. Víctor Echeandía, Punta del Mar Inc., Banco Bilbao Vizcaya y Punta del Mar Village III, Inc. et al., en la que alegó, entre otras cosas, que el señor Correa Nieves trans-firió ilegal y fraudulentamente, sin su consentimiento y conocimiento, la Parcela D del Proyecto Punta del Mar, cuya titular registral es Punta del Mar Beach Village, S.E.
Indicó que la referida parcela fue transferida con la ayuda del Sr. Víctor Echeandía a la corporación Punta del Mar Beach Village III, Inc., et al., cuyo único accionista es el señor Correa Nieves. Alegó que de esta manera el señor Correa Nieves despojó a Punta del Mar Beach Village, S.E. de parte de su activo principal. Posteriormente, la parcela objeto de controversia fue gravada por el señor Correa Nieves con un préstamo hipotecario de $7,000,000 a favor del Banco Bilbao Vizcaya Argentaría.
Como resultado de lo anterior, el señor Quiñones Reyes expuso en su demanda las causas de acción siguientes: vio-lación al deber de fiducia, acción derivativa y directa de un accionista minoritario, daños y perjuicios, acción reivindi-catoría, descorrimiento de velo corporativo y nulidad de contrato. Como parte de la acción reivindicatoría instada, el señor Quiñones Reyes presentó ante el Registro de la Propiedad, sección de Aguadilla, una instancia registral so-bre anotación preventiva de demanda, acompañada de co-pia certificada de la demanda.
Tras evaluar los documentos presentados, el Registra-dor de la Propiedad, Hon. Frank Quiñones Vigo (Registra-dor), denegó la inscripción de la anotación preventiva por el fundamento siguiente:
El documento de referencia no tiene acceso al Registro de la *868 Propiedad porque adolece de las siguientes faltas: El docu-mento no puede ser subsanado, por lo que se debe obtener y presentar nuevamente en el Registro con una ORDEN Y MANDAMIENTO [,] y si se prestó fianza, según lo determine el Tribunal. Rocafort v. Álvarezl[,] 112 DPR 563; Pérez v. Mercado v. Ramírez Rondón[,] 130 DPR 134; Isabel Acosta v. Sandra Valentín, 2003 TSPR 97. (Énfasis suplido.) Apéndice del Recurso Gubernativo, pág. 24.
Insatisfecho con dicha calificación, el señor Quiñones Reyes presentó un Escrito de Recalificación. Señaló que de acuerdo con los Artículos 112 y 113 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria),(4) no tenía que presentar una orden y mandamiento judicial junto a la solicitud de anotación preventiva de demanda, ya que la titular registral de la parcela en controversia es Punta del Mar Beach Village, S.E., y éste es dueño del 42.75% del caudal social. La médula del razonamiento del recurrente es que la sociedad especial no posee personalidad jurídica distinta e independiente a la de sus socios especiales, por lo que éstos tienen un derecho real sobre la propiedad in-mueble de la sociedad especial, y por ello no tienen que gestionar orden y mandamiento judicial alguno para pro-ceder con la anotación preventiva de demanda.
Luego de examinar el Escrito de Recalificación, el Regis-trador denegó nuevamente la inscripción de la anotación preventiva de demanda y extendió una anotación de dene-gatoria por el término de sesenta días.
Contra la nota denegatoria del Registrador, el señor Quiñones Reyes presentó ante nos un Recurso Gubernativo. Objetó la calificación del Registrador por en-tender que no está obligado a gestionar una orden y man-damiento judicial según el Art. 113 de la Ley Hipotecaria, supra, para solicitar la anotación preventiva de demanda, puesto que tiene un derecho real inscrito sobre la finca en controversia.
*869 Contrario a lo alegado por el señor Reyes Quiñones, el Registrador indicó en su alegato que la reclamación del recurrente no está fundamentada en un derecho real ins-crito puesto que la titular registral de la mencionada finca era Punta del Mar Beach Village, S.E., y ésta tiene una personalidad jurídica distinta a la de sus socios. Por ello argüyó que, en aras de obtener acceso al Registro, la soli-citud de anotación preventiva de demanda tiene que estar acompañada de una orden y mandamiento judicial, de acuerdo con los Arts. 112 y 113 de la Ley Hipotecaria, supra.
El caso quedó sometido en los méritos el 19 de marzo de 2007. Posteriormente, compareció ante nos Punta del Mar Beach Village III, Inc. y solicitó autorización para interve-nir en el caso de epígrafe. Alegó en su moción que tenía derecho a intervenir conforme a la Regla 21.1 de Procedi-miento Civil,(5) puesto que su interés propietario sobre la finca en controversia se había afectado con el aviso de de-negatoria anotado en el Registro ya que se estaba reali-zando la segregación, liberación y venta de cada unidad de vivienda del proyecto. Indicó, además, que desconocía la existencia del presente recurso gubernativo y nos solicitó que le ordenáramos al señor Quiñones Reyes que le prove-yera copia de los escritos presentados para así defender adecuadamente su posición.
Por su parte, el señor Quiñones Reyes se opuso a la solicitud de intervención de Punta del Mar Beach Village III, Inc. y argüyó que la intervención no procedía porque la naturaleza del recurso gubernativo no es contenciosa. Se-ñaló que por tratarse de un proceso no contencioso entre el Registrador y la parte que interesa la inscripción, el Art. 77 de la Ley Hipotecaria(6) solamente exige que el recurso gubernativo sea notificado al Registrador.
Luego de ponderar los argumentos esbozados por Punta *870 del Mar Beach Village III, Inc. en su moción, declaramos “no ha lugar” su solicitud de intervención. Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.
II
Nuestro ordenamiento jurídico inmobiliario ha instituido la anotación preventiva de demanda como un mecanismo que le imparte publicidad en el Registro de la Propiedad a la interposición de una litis, en la que se ejercita alguna pretensión procesal relativa al dominio o a los derechos reales sobre la finca en cuestión.(7) La anotación preventiva de demanda es un asiento provisional que asegura transitoriamente ciertos derechos. Su función consiste en advertir que la titularidad del derecho inscrito está subordinada al resultado de un litigio. De esta manera, los futuros adquirentes de la finca conocerán las posibles causas de nulidad de los títulos inscritos, por lo que no podrán alegar desconocimiento de las causas de nulidad. (8)
Al delinear los contornos de la figura de la anotación preventiva de demanda, en Segarra v. Vda. de Llórens, 99 D.P.R. 60 (1970), expresamos que el propósito de ésta es preservar el debido respeto a la administración de la justicia, ya que evita que las sentencias judiciales resulten inoficiosas por actos del demandado dirigidos a impedir la ejecución del fallo. De esta forma, se mantiene el status quo de la finca en controversia hasta la resolución del pleito y se impide la adquisición a non domino por un tercero del derecho reclamado en el proceso judicial.(9) No obs- *871 tante, es preciso señalar que la anotación preventiva no da ni quita derechos y carece de los demás efectos, defensivos y ofensivos, de una inscripción.(10)
En conformidad con lo anterior, se colige que el propósito primordial de la anotación preventiva de de-manda es “ ‘asegurar un rango al derecho real que como consecuencia del litigio pueda constituirse, asegurando la retroactividad del mismo al momento de la anotación de la demanda frente a los terceros que hayan inscrito en el in-termedio algún derecho’ ”. (Énfasis suplido.)(11) Esto signi-fica que de prevalecer el promovente en el litigio instado, la anotación preventiva se convertirá en un asiento definitivo de inscripción a su favor.
La anotación preventiva de demanda está regu-lada por los Arts. 112 y 113 de la Ley Hipotecaria.(12) Los referidos artículos detallan las particularidades de la ano-tación preventiva de demanda así como el procedimiento a seguir para efectuar la anotación en el Registro. El Art. 112 de la Ley Hipotecaria dispone del modo siguiente:
Podrán pedir anotación preventiva de sus respectivos dere-chos en el Registro: 1ro. El que reclamare en juicio la propie-dad de bienes inmuebles o la constitución, declaración, modi-ficación o extinción de cualquier derecho registrable o el que reclamare en alguna acción que afecte al título de propiedad inmueble, o sobre la validez y eficacia, o invalidez o ineficacia, del título o títulos referentes a la adquisición, constitución, declaración, modificación o extinción de los precitados dere-chos registrables. (Énfasis suplido.) 30 L.P.R.A. see. 2401.
Del texto antes transcrito surge que la anotación preventiva de demanda se efectuará en el Registro de la Propiedad si la acción judicial interpuesta está dirigida a *872 afectar de alguna manera la titularidad del bien inmueble en cuestión o algún otro derecho real relacionado con el mismo. Por lo tanto, sólo tendrán acceso al Registro de la Propiedad aquellos derechos que, por sus propios términos, sean inscribibles.(13)
Ahora bien, el Art. 113 de la Ley Hipotecaria dis-pone que la referida anotación “no podrá hacerse ... sino cuando se ordene por providencia judicial dictada a instancia de parte legítima y en virtud de documento bastante al prudente arbitrio del juzgador, excepto cuando la acción tenga un derecho real inscrito como base para su ejercicio, en cuyo caso será suficiente para su anotación en el Registro la presentación de copia certificada de la demanda”. (Énfasis suplido.(14) Por su parte, el Art. 115.4 del Reglamento Hipotecario, 30 L.P.R.A. sec. 870.405, reitera lo dispuesto en el Art. 113 de la Ley Hipotecaria, supra, y dis-pone que la demanda deberá describir la finca afectada e identificar con claridad el derecho real inscrito sobre el cual se fundamenta la acción.
El artículo antes citado preceptúa dos maneras de efectuar la anotación preventiva de demanda. Como regla general, la anotación de demanda requiere la intervención de un juez como garantía para sopesar los méritos de la solicitud de quien promueve. Una vez el juez ha ponderado los méritos, expedirá una orden y mandamiento judicial, autorizando la anotación o la denegará.
A manera de excepción, puede practicarse en el Registro tal anotación sin la intervención judicial, siempre y cuando *873 la causa de acción se funde en un derecho real inscrito como base para su ejercicio. Tal limitación fue introducida en la Ley Hipotecaria con el propósito de “evitar las anotaciones de demanda viciosas ... y la posibilidad de perjuicio inde-bido por acciones fraudulentas, aligera[ndo así] el trámite en las ejecuciones de hipoteca”.(15)
A través de nuestra jurisprudencia hemos tenido la oportunidad de analizar la excepción consignada en el Art. 113 de la Ley Hipotecaria, supra.(16) Sobre estos extremos, hemos resuelto que de acuerdo con las reglas de hermenéutica, dicha excepción debe ser interpretada restrictivamente. Ello es así puesto que el juzgador no ha ponderado los méritos de la reclamación de quien promueve y porque tal ánotación puede convertirse en una inscripción definitiva. Además, en Kermit Const. Corp. v. Registrador, 103 D.P.R. 583, 589-590 (1975), expresamos que la liberalización injustificada de dicho procedimiento podría desembocar en coacciones y amenazas por parte del promovente.(17)
Según lo anterior, es evidente que de la faz de la de-manda presentada por el promovente en el Registro de la Propiedad debe surgir claramente el derecho real sobre el cual se funda la acción. Nótese que lo determinante para decidir si procede la anotación de demanda no es si la ac-ción es de naturaleza personal o no. El punto neurálgico del análisis estriba en determinar si la acción entablada afecta el título de una propiedad inmueble; esto es, si la acción va encaminada a obtener una modificación jurídica *874 de carácter real y su finalidad primaria es afectar o alterar el título inscrito del inmueble.
Ahora bien, es menester señalar que una vez el Registrador deniega la anotación de demanda sin orden y mandamiento judicial, por entender que no tiene como fundamento un derecho real inscrito, la anotación es insubsanable. Así lo reconocimos en E.R. Foods, Inc. v. Lee Optical, 117 D.P.R. 566, 569-570 (1986), al resolver que tal defecto no puede ser subsanado, puesto que ello equivaldría a resucitar la desterrada anotación de lis pendens establecida en el ya derogado Art. 91 del Código de Enjuiciamiento Civil. (18)
III
La sociedad civil adviene a la vida jurídica gracias a un “contrato por el cual dos o más personas se obligan a poner en común dinero, bienes o industria con ánimo de partir entre sí las ganancias”.(19) Tal entidad se distingue por la affectio societatis; esto es, la cooperación o empresa común hacia un mismo fin, propiciando así la unión de intereses de diferentes individuos para fines de lucro.(20) La característica principal de la sociedad civil es que sus miembros responden con su patrimonio personal, subsidiaria y mancomunadamente de las obligaciones de la sociedad en caso de que el patrimonio social no sea suficiente para cubrirlas. Conviene indicar, además, que la responsabilidad de los socios es ilimitada, por lo que responden con todos sus bienes presentes y futuros.
Como se puede apreciar, la responsabilidad personal e *875 ilimitada de los socios es una de las desventajas de esta figura. Ante tal realidad, y en aras de incentivar el desa-rrollo económico y ofrecer mayor protección a quienes se organicen como sociedad para conducir sus negocios, la Asamblea Legislativa incorporó a nuestro acervo jurídico la figura de la sociedad especial.(21)
Contrario a la sociedad civil, los miembros de la sociedad especial gozan de responsabilidad limitada y, en el aspecto fiscal, no tributan como un ente separado, solamente tributan en su carácter individual. De esta forma, los socios tributarán las ganancias y las pérdidas de la sociedad especial en su planilla personal, de acuerdo con su participación distribuible en el ingreso o en la pérdida de la sociedad.(22)
Para obtener el tratamiento contributivo diseñado por la Legislatura, es preciso que el setenta por ciento del in-greso bruto de la sociedad especial provenga de fuentes de Puerto Rico y que, por lo menos, setenta por ciento de tal ingreso sea producto de la explotación de ciertas activida-des, tales como: negocio de construcción, negocio de venta o arrendamiento de edificaciones, negocio turístico, negocio agrícola, etc.(23) No obstante, para recibir dicho trata-miento fiscal es imperativo que los socios soliciten y obten-gan la aprobación del Departamento de Hacienda.(24) Para ello, los socios tienen que otorgar una declaración jurada y presentarla en el Departamento de Hacienda dentro de los *876 primeros noventa días del año contributivo en el cual han realizado la elección. (25)
Respecto a la responsabilidad limitada de los socios, el Art. 1589 del Código Civil(26) fue enmendado para disponer lo siguiente:
No obstante lo que se disponga en otra parte de este título, los socios que compongan una “sociedad especial” creada al amparo de las leyes aplicables vigentes y en cumplimiento con todos los requisitos del Suplemento “P” del Capítulo 3 de la Ley Núm. 91 de 29 de junio de 1954, según enmendada, cono-cida como “Ley de Contribuciones sobre Ingresos de 1954” o de las sees. 8630 a 8658 del Título 13, parte del “Código de Ren-tas Internas de Puerto Rico de 1994”, y que lo expresen en su nombre con las siglas S.E. luego del nombre de la sociedad, no serán responsables con su patrimonio personal más allá de su aportación a la sociedad especial por las deudas y obligaciones de la sociedad, en caso de que el patrimonio social no alcance para cubrirlo. Nada de lo aquí dispuesto se deberá interpretar de forma tal que limite las obligaciones de un socio por sus actos personales.
Así, pues, en caso de que el patrimonio social no alcance para cubrir las obligaciones de la sociedad, los socios res-ponderán hasta el monto de su aportación a la entidad. En este renglón, la sociedad especial se asemeja más a una corporación que a la sociedad civil propiamente, puesto que en aquella los inversionistas sólo arriesgan el capital invertido.
Aunque en el aspecto contributivo la sociedad especial está reglamentada por el Código de Rentas Internas, en el matiz sustantivo rige el Código Civil. No obstante, el Código Civil aplicará supletoriamente, ya que en primera instancia regirá lo pactado en el contrato de sociedad especial.(27) Ahora bien, en el aspecto externo, las normas *877 del Código Civil son vinculantes y los socios no pueden dejarlas sin efecto.(28)
Tras exponer la normativa relativa a la sociedad especial, pasemos a la controversia ante nuestra consideración.
IV
Como indicáramos anteriormente, debemos resolver si un socio especial puede solicitar la anotación preventiva de demanda al amparo de la excepción consagrada en el Art. 113 de la Ley Hipotecaria, supra, para recuperar un bien inmueble perteneciente a la sociedad especial, el cual apa-rentemente fue transferido ilegalmente a urna corporación cuyo único accionista es el otro socio especial.
En el caso de autos, el señor Quiñones Reyes presentó, en su carácter de socio de Punta del Mar Beach Village, S.E., una acción reivindicatoría para que la sociedad especial recupere una parcela que, alegadamente, fue transfe-rida ilegalmente por el señor Correa Nieves a la corpora-ción Punta del Mar Beach Village III. A tono con la causa de acción interpuesta, el señor Quiñones Reyes presentó en el Registro de la Propiedad una instancia registral sobre anotación de demanda preventiva en la parcela objeto de controversia.
El Registrador denegó la solicitud de anotación preven-tiva de demanda presentada al amparo del Art. 113 de la Ley Hipotecaria, supra, por el señor Quiñones Reyes —en su carácter de socio de Punta del Mar Beach Village, S.E.— por entender que la titular registral del bien inmueble en controversia era la sociedad especial, entidad jurídica con personalidad distinta e independiente a la de sus socios. No nos persuade su argumento.
Si bien es cierto que la sociedad especial po-see una personalidad jurídica independiente a la de sus *878 socios,(29) ello no es óbice para que los socios puedan com-parecer en tal carácter y en representación de la sociedad especial en aras de realizar ciertas y determinadas accio-nes encaminadas a salvaguardar y vindicar los derechos de tal ente jurídico. No cabe duda de que el socio, en repre-sentación de la sociedad especial, en este caso puede com-parecer al Registro de la Propiedad y solicitar que se prac-tique la anotación preventiva de demanda sin una orden y un mandamiento judicial. Claro está, ello será así siempre que el socio especial cumpla con los requisitos esbozados en los Arts. 112 y 113 de la Ley Hipotecaria, supra. De acuerdo con los referidos artículos, es preciso que la acción judicial que la inspira'. (1) esté fundamentada en un dere-cho real inscrito a favor de la sociedad especial, y (2) dicho litigio esté dirigido a alterar la titularidad del bien inmue-ble en controversia. Además, de cumplir con tales requisi-tos, debe surgir de la demanda que el socio ha comparecido en tal carácter y está actuando en representación de la so-ciedad especial y no en su carácter personal. Esa es la si-tuación del caso ante nos.
Es imperativo señalar que de la faz de la demanda pre-sentada por un socio debe surgir claramente que la acción judicial que insta es en representación de la sociedad especial y no en su carácter personal. Ahora bien, no basta con incluir en el epígrafe de la demanda que el socio comparece en tal carácter. Es preciso que la demanda incoada por el socio en el foro primario esté dirigida a salvaguardar los derechos de la sociedad. De esta manera, se evita que por motivos puramente personales y alegaciones destempla-das, un socio solicite anotar preventivamente la demanda instada, según la excepción que provee el Art. 113 de la Ley Hipotecaria, supra.
El hecho de que la propiedad inmueble esté inscrita a *879 favor de la sociedad especial no constituye impedimento para que un socio pueda solicitar la anotación preventiva de demanda de acuerdo con la excepción consignada en el Artículo 113 de la Ley Hipotecaria, supra, en una situación como la presente. Los socios, como miembros de la sociedad especial, tienen derecho a utilizar las herramientas del or-denamiento jurídico para proteger el haber social, el cual ha sido aportado por ellos. Más aún cuando las acciones entabladas están dirigidas a proteger o recuperar el título de bienes inmuebles pertenecientes a la sociedad especial.
Resolver que los socios en un pleito dirigido a recuperar la titula ' lad de un bien inmueble de la sociedad especial no pued solicitar la anotación preventiva de demanda vía la excepción consignada en el Art. 113 de la Ley Hipo-tecaria, supra, equivaldría a una interpretación demasiado restrictiva de dicho estatuto. Si bien la antedicha excep-ción debe interpretarse restrictivamente, ello no supone que haya que dársele una interpretación ilógica.
Conviene indicar que nuestros pronunciamientos no re-sucitan de manera alguna la desterrada figura del aviso lis pendens. Recordemos que la figura del aviso lis pendens le permitía al demandante gravar los bienes de su adversario con la mera presentación de la demanda, sin la interven-ción del juez.(30) La unilateralidad y arbitrariedad de la anotación lis pendens nos movió a declararla ineficaz en Rocafort v. Álvarez, 112 D.RR. 563 (1982).
Como se puede apreciar, no estamos ante la figura de la anotación lis pendens, puesto que no procede la anotación preventiva de demanda en el Registro de la Propiedad con la mera presentación de la demanda por parte del socio especial. Como ya dijimos, el socio interesado en solicitar la anotación preventiva de demanda vía la excepción con-signada en el Art. 113 de la Ley Hipotecaria, supra, tiene que cumplir con cada uno de los requisitos siguientes: (1) la acción judicial esté fundamentada en un derecho real *880 inscrito a favor de la sociedad especial; (2) dicho litigio esté dirigido a afectar la titularidad del bien inmueble en con-troversia, y (3) el socio actúe en representación de la socie-dad especial y no en su carácter personal.
Por lo tanto, resolvemos que en un caso como el pre-sente en el cual el litigio está dirigido a recuperar la pro-piedad inmueble de la sociedad especial, un socio puede solicitar la anotación preventiva de demanda bajo la excep-ción consagrada en el Art. 113 de la Ley Hipotecaria, supra.
Al examinar los documentos que obran en los autos del presente caso, surge con amplia claridad lo siguiente: (1) que el litigio instado está fundamentado en el derecho real inscrito; (2) que dicha acción está dirigida, inter alia, a obtener la modificación jurídica y de carácter real de la Parcela D en controversia, y (3) que el señor Quiñones Reyes ha presentado la demanda en su carácter de socio y en representación de la referida sociedad especial. Es menes-ter señalar que al ponderar cuidadosamente las alegacio-nes formuladas por el señor Quiñones Reyes y los docu-mentos anejados, razonablemente podemos concluir que no estamos ante una demanda frívola.
Por lo tanto, ya que la acción judicial tiene como funda-mento un derecho real inscrito y la demanda incoada cum-ple con cada uno de los requisitos esbozados, el señor Qui-ñones puede solicitar en el Registro de la Propiedad la anotación de demanda sobre la Parcela D en controversia vía la excepción consagrada en el Art. 113 de la Ley Hipo-tecaria, supra. Tal solución es la más justa y lógica. No tiene sentido jurídico resolver lo contrario.
Por los fundamentos antes expuestos, se le ordena al Registrador de la Propiedad, Hon. Frank Quiñones Vigo, que proceda a practicar en el Registro de la Propiedad la anotación de demanda solicitada por el señor Quiñones Reyes.
La Juez Asociada Señora Rodríguez Rodríguez disintió *881 con una opinión escrita, a la cual se unieron el Juez Presi-dente Señor Hernández Denton y la Jueza Asociada Se-ñora Fiol Matta.

 Véase Demanda, Apéndice del Recurso Gubernativo, págs. 10-11.

 íd., pág. 11. El señor Quiñones Reyes adujo en su demanda que primero constituyó una sociedad especial con el Sr. Nicomedes Barreto, a la que denominaron West Coast Development. Posteriormente, ambos acudieron a Standard Mortgage para obtener financiamiento. Cabe señalar que el presidente de dicha entidad finan-ciera era el señor Correa Nieves. El señor Quiñones Reyes alega en su demanda que el señor Correa Nieves les sugirió a él y al Sr. Nicomedes Barreto que buscaran un socio inversionista. Luego de evaluar la situación, aceptaron al señor Correa Nieves como socio especial.

 Tras la venta de la participación del Sr. Nicomedes Barreto al señor Correa Nieves, las participaciones en las sociedades especiales cambiaron de la manera siguiente: el señor Quiñones Reyes tiene una participación de 42.75% en ambas sociedades, mientras que el señor Correa Nieves posee el 52.25%. Respecto a Punta del Mar, Inc., el señor Quiñones Nieves es dueño del 45% de las acciones, mientras que el señor Correa Nieves posee el 55% de las acciones.

 30 L.P.R.A. secs. 2401 y 2402.

 32 L.P.R.A. Ap. III.

 30 L.P.R.A. sec. 2280.

 R. Roca Sastre y L.M. Roca Sastre Muncunill, Derecho Hipotecario, 7ma ed., Barcelona, Ed. Bosch, T. IV, Vol. 1, 1979.

 Segarra v. Vda. de Llórens, 99 D.P.R. 60, 69 (1970).

 L.R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 2da ed., San Juan, Jurídica Editores, 2002, pág. 451.

 Echevarría Jiménez v. Sucn. Pérez Meri, 123 D.P.R. 664, (1989).

 Íd., pág. 678.

 30 L.P.R.A. secs. 2401 y 2402.

 Art. 114.1 del Reglamento Hipotecario, 30 L.RR.A. sec. 870.401.

 Art. 113 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria), 30 L.P.R.A. sec. 2402. Conviene señalar que el Art. 115.4 del Reglamento Hipotecario, 30 L.P.R.A. sec. 870.405, reitera lo dispuesto en el Art. 113 de la Ley Hipotecaria, supra, e indica que la demanda deberá identificar con claridad el dere-cho real inscrito sobre el cual se fundamenta la acción y la descripción de la finca afectada. Asimismo, el Art. 115.5 del Reglamento Hipotecario, 30 L.P.R.A. sec. 870.406, dispone que cuando la anotación preventiva se fundamente en un derecho real inscrito, el Registrador de la Propiedad no exigirá que se acredite la notificación al afectado por la anotación.

 Informe de la Comisión de lo Jurídico del Senado sobre el alcance del P. del S. 792, 8va Asamblea, 3ra Sesión Ordinaria de 1979, pág. 11.

 Véanse: Rocafort v. Álvarez, 112 D.P.R. 563 (1982); Banco Central y Economías v. Registrador, 111 D.P.R. 773 (1981); Kermit Const. Corp. v. Registrador, 103 D.P.R. 583 (1975).

 Aun cuando dichos pronunciamientos ocurrieron en el contexto del aviso de lis pendens estatuido en el Art. 91 del Código de Enjuiciamiento Civil, 32 L.P.R.A. ant. sec. 455, son aplicables a la excepción dispuesta en el Art. 113 de la Ley Hipotecaria, supra, ya que en ésta el juez no tiene la oportunidad de evaluar los méritos de la solicitud de quien promueve.

 32 L.P.R.A. ant. sec. 455.

 Art. 1556 del Código Civil, 31 L.P.R.A. sec. 4311. Como se puede apreciar, de dicha definición se desprende que tal contrato es de naturaleza consensual, onerosa, bilateral o plurilateral, de gestión colectiva y de tracto sucesivo.

 Marcial v. Tomé, 144 D.P.R. 522, 547 (1997); Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 188 (1985).

 Véase Ley Núm. 8 de 19 de julio de 1985 (13 L.P.R.A. secs. 3330, 3355 y 2411).

 Véase C. Díaz Olivo, Corporaciones, San Juan, Pubs. Puertorriqueñas, 1999, pág. 453. El profesor Díaz Olivo resalta en su libro que el tratamiento fiscal de la sociedad especial es uno de sus grandes atractivos puesto que en las corporaciones no es posible deducir las pérdidas de las mismas en las planillas personales de sus miembros.

 Véase Ley Núm. 8, supra.

 Véase Sec. 1392(a) del Código de Rentas Internas, 13 L.P.R.A. sec. 8642(a).

 Íd.

 31 L.P.R.A. sec. 4372.

 Marcial v. Tomé, supra, págs. 546-547.

 Díaz Olivo, op. cit, pág. 430.

 Véanse: Linden Development v. De Jesús-Ramírez, 175 D.P.R. 647 (2009); Asociación de Propietarios v. Santa Bárbara Co., 112 D.P.R. 33 (1982).

 Rocafort v. Álvarez, supra, págs. 570-571.